**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

CROSSVUE, LLC,

        **Plaintiff,**

v.                                  **Case No: 6:25-cv-1345-PGB-LHP**

HALIFAX HOSPITAL MEDICAL
CENTER,

        **Defendant.**

_____/

## <u>ORDER</u>

This cause is before the Court on Defendant Halifax Hospital Medical Center's ("**Defendant**") Motion to Dismiss (Doc. 17 (the "**Motion**")) of Plaintiff CrossVue, LLC's ("**Plaintiff**") Complaint. Plaintiff has filed a response in opposition (Doc. 22 (the "**Response**")). After a review of the briefing, the Motion is due to be denied.

## I.    BACKGROUND[1]

This is an action for breach of contract. (*See* Doc. 7 (the "**Amended Complaint**")). Plaintiff is a consulting firm that implements office workflow technology. (*Id.* ¶ 9). Specifically, Plaintiff's workflow technology is "a full-service

---

[1]   This account of the record is derived from Plaintiff's Amended Complaint. (Doc. 7). The Court accepts plaintiffs' factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

cloud-based software designed to integrate the human resources, financial management, and planning functions of an organization." (*Id.* ¶ 11).

Defendant is a public hospital system. (*Id.* ¶ 10). On August 30, 2023, Defendant entered into a series of contracts (collectively, the "**Agreement**") with Plaintiff for the implementation of the workflow technology. (*Id.* ¶¶ 19–20). Specifically, the Agreement provides for the "termination of the project, the payment of invoices, and the dispute resolution process" as well as "individual tasks and deliverables at the project level." (*Id.* ¶¶ 19, 21).

Once the Agreement was signed, Plaintiff began to implement the workflow technology. For "approximately one year-and-a-half" Plaintiff worked to implement the technology until November of 2024, when "the bulk of the entire project[]" was almost finished. (*Id.* ¶¶ 35, 42). By then "[a]ll that was left to do was to go-live in December[.]" (*Id.* ¶ 42). However, by the time the workflow technology "went live, [Defendant's] unpaid invoices had snowballed." (*Id.* ¶ 58). Ultimately, "on the eve of the project's completion" Defendant "sent a letter to [Plaintiff] . . . notifying it that [Defendant] was terminating the Agreement[.]" (*Id.* ¶ 64). Because of the termination, Defendant allegedly owes Plaintiff an outstanding balance of $2,014,130.38. (*Id.* ¶ 66).

As a result of these events, Plaintiff brings this diversity action for breach of contract, unjust enrichment, and violations of the Florida Local Government Prompt Payment Act. (*Id.* ¶¶ 70–100). In response, Defendant filed the Motion, seeking to dismiss the case pursuant to a mandatory forum selection provision in

the Agreement. (Doc. 17, p. 1). In relevant part, the governing forum selection clause provides:

> [t]his Agreement and any Project Order under this Agreement are governed by and construed with the laws of the State of Florida without regard to its conflicts of law rules. Each party submits its person and property to the exclusive jurisdiction of the courts of the State of Florida.

(Doc. 7-1, p. 10 (the "**Forum Selection Clause**")).

This language, drafted by Plaintiff, originally provided for "the exclusive jurisdiction of the courts of the State of Delaware" (Doc. 17-1, p. 2). However, during negotiations, Defendant edited the language and exchanged "Delaware" for "Florida". (*Id.*).[2] Now, the single issue raised in the Motion is whether the phrase "of the State of Florida" within the Forum Selection Clause limits this action to the state courts of Florida. [3]

## II.    LEGAL STANDARD

The doctrine of *forum non conveniens* allows a court to decline jurisdiction over a case if there is a more convenient forum for the case to be litigated. *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1302 n.4 (11th Cir. 2002). Typically, to

---

[2]    The Court notes that it relies on an extrinsic affidavit describing the negotiations to resolve the Motion. (*See* Doc. 17-1). While ordinarily the Court cannot look to facts beyond the Complaint at the motion to dismiss stage, it can do so when "a contract fails to specify the rights or duties of the parties [and] extrinsic evidence is necessary for interpretation . . . the court may consider parol evidence." *Crespo v. Crespo*, 28 So. 3d 125, 128 (Fla. 4th DCA 2010). Here, the Court relies on a description of the negotiations from the Senior Vice President and Chief Legal Officer of Defendant, which appears to be uncontested by Plaintiff's response. (Docs. 17-1, 22).

[3]    Importantly, Plaintiff concedes that the Forum Selection Clause is valid and enforceable. (Doc. 22, p. 5 ("[Plaintiff] does not dispute that the Forum Selection Clause is valid and enforceable, nor that it provides for jurisdiction by 'the courts of the State of Florida.'"))

3

obtain dismissal for *forum non conveniens*, the moving party must demonstrate: "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) [the plaintiff] can reinstate its suit in the alternative forum without undue inconvenience or prejudice." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x. 860, 864 (11th Cir. 2007) (citing Leon v. Million Air, Inc., 251 F.3d 1305, 1311 (11th Cir.2001)). [4]

However, if the parties' contract contains a valid forum selection clause, the *forum non conveniens* analysis is modified in three ways. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, courts "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. Accordingly, the court must only consider public interest factors. *Id.* Finally, "[t]he court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right." *Id.* at 65–66.

"[I]n considering a motion to dismiss for *forum non conveniens*, a court must accept the facts in a plaintiff's complaint as true, 'to the extent they are uncontroverted by the defendants' affidavits.'" *Turner v. Costa Crociere S.P.A.*, F. 488 F. Supp. 3d, 1240, 1246 (S.D. Fla. 2020) (citation omitted). The Court is

---

[4]  "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

generally limited to the facts contained in the complaint and the attached exhibits, but it may consider documents that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F. 3d 949, 959 (11th Cir. 2009). When evidence conflicts, a court must construe the "facts in the light most favorable to the plaintiff." *Turner*, 488 F. Supp. 3d at 1246.

## III.   DISCUSSION

The courts of the State of Florida are famous for many things. Whether this Court is one of them is, apparently, a vigorously contested question of contract interpretation. Defendant argues that the phrase "of the State of Florida" is a *jurisdictional* limitation imposed by the Forum Selection Clause. (Doc. 17, p. 7). Plaintiff argues that the language merely establishes a *geographical* boundary. (Doc. 22, p. 7). Thus, the narrow question before the Court is whether this Court is "of the State of Florida."

First, the disputed language is ambiguous because "it can reasonably be interpreted in more than one way." *Nationstar Mortg. Co. v. Levine*, 216 So. 3d 711, 715 (Fla. 4th DCA 2017). In fact, the Eleventh Circuit has found nearly identical forum selection language to be ambiguous. *See, e.g., Glob. Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1273 (11th Cir. 2004) (finding that the language "the jurisdiction of Broward County, Florida . . . fails to specify what kind of jurisdiction it is referring to, whether it be in personam or territorial[.]"). Upon finding contractual language to be ambiguous, courts typically construe the language against the drafter. *See id.*; *Ideal Protein of Am., Inc. v. Allife Consulting,*

*Inc.*, No. 8:19-CV-654-T-33CPT, 2019 WL 1650021, at *3 (M.D. Fla. Apr. 17, 2019). However, in this case, *both* parties drafted the provision. (Doc. 17-1 (describing the negotiations between the parties)); *e.g.*, *Ideal Protein of Am., Inc.*, 2019 WL 1650021, at *3 (the phrase "of the State of Florida" within a contract was not jointly drafted when the language was "not negotiable."). While Plaintiff provided the template language, Defendant made a substantial edit by substituting "the courts of the State of Delaware" for "the courts of the State of Florida." (Doc. 17-1, p. 2). Accordingly, there is no "drafter" to construe the language against. *Dura-Cast Prods., Inc. v. Rotonics Mfg., Inc.*, No. 8:10-CV-1387-T-24AEP, 2010 WL 3565725, at *2 (M.D. Fla. Sept. 10, 2010) (explaining that it is "not possible to construe the ambiguous language against the drafter" when the contract was jointly drafted.).

Moreover, both the consulting company Plaintiff and public hospital system Defendant in this case are "commercially sophisticated part[ies] represented by counsel." *Beanstalk Grp., Inc. v. AM Gen. Corp.*, 283 F.3d 856, 858 (7th Cir. 2002). While there is reason to construe ambiguous contract language against a drafter that enjoys a significant bargaining advantage over the other party, that justification does not follow wherein both parties are sophisticated commercial entities negotiating on equal footing. Thus, the question as to who drafted the language "has little interpretive significance" because "[m]ost courts now agree with this exception to the principle that contracts are to be construed against the party that drafted it." *Id.*; *The Sch. Bd. of Broward Cnty. v. The Great Am. Ins. Co.*,

6

807 So. 2d 750, 752 (Fla. 4th DCA 2002) (confirming that Florida law has adopted this exception for contracts "negotiated between sophisticated parties.").

However, Plaintiff also points to a separate cannon of contract interpretation that urges courts to construe "contract provision[s] . . . inserted for the benefit of a party . . . more strongly against that party." *Storz Broad. Co. v. Courtney*, 178 So. 2d 40, 42 (Fla. 3d DCA 1965). Here, the insertion of the word "Florida" was clearly to the benefit of the Florida citizen Defendant and at the expense of the Delaware citizen Plaintiff. *See, e.g.*, *E-Core IT Sols., LLC v. Unation, LLC*, No. 8:14-CV-927-T-33TGW, 2014 WL 3586501, at *3 (M.D. Fla. July 8, 2014). This principle is applicable here because Defendant negotiated for this provision for its own benefit and thus had the incentive and responsibility to be precise. (Doc. 17-1). Accordingly, because Defendant bargained for the Forum Selection Clause in its current form, it is fair to interpret the ambiguous language in favor of Plaintiff. Thus, the Forum Selection Clause does not preclude Plaintiff from bringing its case in this Court.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (Doc. 17) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on April 29, 2026

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

8